# IN THE U.S. DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Jordan Bohall** | * | |
| **13800 Barte Road, Unit D** | | |
| **Ocean City, Maryland 21842** | * | |
| | | |
| **Travis Carpenter** | * | |
| **12623 Shell Mill Road, Apt. 62** | | |
| **Bishopville, Maryland 21813** | * | |
| | | |
| **Frank Cortazzo** | * | |
| **10340 Tudor Road** | | |
| **Ocean City, Maryland 21842** | * | |
| | | |
| **Armand Landry-Gass** | * | |
| **16 Beaconhill Road** | | |
| **Ocean Pines, Maryland 21811** | * | |
| | | |
| **Megan Ramos** | * | |
| **320 136th Street, Apt. D** | | |
| **Ocean City, Maryland 21842** | * | |
| | | |
| **William Stroud** | * | |
| **100 Tail of the Fox Drive** | | |
| **Berlin, Maryland 21811** | * | |
| | | |
| **Plaintiffs** | * | |
| | | |
| **v.** | * | **Case No. _____** |
| | | **JURY TRIAL REQUEST** |
| **OC R&D, Inc.** | * | |
| **193-B Main Street** | | |
| **Annapolis, Maryland 21401** | * | |
| | | |
| **Brian Bolter** | * | |
| **18 South Street** | | |
| **Annapolis, Maryland 21401** | * | |
| | | |
| **Lisa Bolter** | * | |
| **18 South Street** | | |
| **Annapolis, Maryland 21401** | * | |
| | | |
| **Defendants** | * | |

_____/

## COMPLAINT FOR UNPAID WAGES

Plaintiffs, Jordan Bohall, Travis Carpenter, Frank Cortazzo, Armand Landry-Gass, Megan Ramos, and William Stroud (collectively, "Plaintiffs"), through undersigned counsel, state a complaint against Defendants OC R&D, Inc., Mr. Brian Bolter, and Ms. Lisa Bolter (collectively, "Defendants"), pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and supplemental state law claims under the Maryland's Wage and Hour Law, Md. Code Ann., Lab. & Empl. 3-401 *et seq* ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. 3-501 *et seq.* ("MWPCL"), and demand a jury trial, as follows:

### Introduction

1.      This is a civil action for unpaid minimum wages, overtime wages, damages, and relief provided by the FLSA, 29 U.S.C. § 201 *et seq.*, the MWHL, Md. Code Ann., Lab. & Empl. 3-401 *et seq.*, and the MWPCL, Md. Code Ann., Lab. & Empl. 3-501 *et seq.*

2.      Plaintiffs seek, in addition to the actual sums owed, liquidated and statutory damages pursuant to the FLSA, MWHL, and MWPCL, and attorneys' fees and costs as provided under the under the FLSA, MWHL, and MWCPL.

### Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 206, 29 U.S.C. § 207, and 28 U.S.C. § 1331.

4.      This Court has supplemental jurisdiction over the MWHL and MWPCL claims pursuant to 28 U.S.C. § 1367(a) because said claims are so related to the FLSA claims that they form part of the same case or controversy.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b), because Defendants do business within

this judicial district and the events giving rise to these claims occurred in this judicial district.

**Parties**

6.      Defendant OC R&D, Inc. ("OC R&D") is a corporation formed in the State of Maryland to engage in the operation of restaurants, bars and related activities.

7.      Defendant OC R&D owns and operates two restaurants in Ocean City, Maryland, "Dry 85 OC" and "Red Red Wine Bar OC", both of which are located at 12 48th Street, Ocean City, Maryland 21842.

8.      Within the last three years preceding the filing of this lawsuit, and upon information and belief, both restaurants have paid wages to employees through the payroll accounts of Defendants OC R&D.

9.      Both restaurants share the same kitchen space, the same management, same ownership, and the same personnel.

10.     For example, and as set forth in greater detail below, the Defendants assigned Plaintiffs to work at both restaurants at various times, often performing work for both restaurants during the same shift.

11.     Additionally, Defendants would have Plaintiffs clock in to one restaurant while working at the other restaurant and vice versa.

12.     Within the last three years preceding the filing of this lawsuit, and as set forth in further detail below, human resource and payroll decisions have been carried out by Defendants Brian Bolter and Lisa Bolter.

13.     At all times material herein, Defendant OC R&D had an annual gross volume of sales made or business done in an amount exceeding $500,000.00.

14.     At all times material herein, Defendant OC R&D, has employed at least two or more

employees who are engaged in commerce, and who produce goods for commerce, or handle, sell, or otherwise work on goods or materials that have moved in or were produced for commerce as a single enterprise under the FLSA.

15.     For instance, there are employees of the Defendants who negotiate and purchase food from producers and suppliers who operate in interstate commerce.

16.     There are employees who, like Plaintiffs, cook, serve, and otherwise handle this food, as well as the beverages, that cross interstate and even international boundaries.

17.     There are employees who regularly use wire and electronic means of communicating interstate, who also regularly sell food and beverages that have moved in interstate commerce and who regularly process credit card transactions for customer payments.

18.     There are employees who use, in Defendants' restaurant, cleaning products, dishes, tools, utensils, napkins, menus, signage, among other items, that have moved in interstate commerce.

19.     Accordingly, the Plaintiffs were employed by Defendant OC R&D, an entity covered by the FLSA's enterprise coverage provisions.

20.     Defendant OC R&D also satisfies the coverage provisions of the MWHL.

21.     As a covered enterprise, OC R&D has at all material times been an "employer" within the meaning of the FLSA, MWHL, and MWPCL.

22.     Defendants Brian Bolter and Lisa Bolter (collectively referred to herein as the "Bolter Defendants") are the husband and wife owners of Defendant OC R&D.

23.     The Bolter Defendants have complete operation control of OC R&D.  Upon information and belief, the Bolter Defendants maintain custody and control of OC R&D business records and are responsible for maintaining those records, such as payroll records.

24.     Additionally, upon information and belief, for all times material to this case, the Bolter

Defendants were, and continue to be, aware of operational issues throughout the restaurant, and are knowledgeable of OC R&D past and present employment practices and policies.

25.     Upon information and belief, for all times material to this case, the Bolter Defendants possessed and continue to possess the authority and discretion to fix, adjust and determine hours worked and amounts paid with respect to employees at OC R&D, including Plaintiffs, and possessed the ability to hire employees and have terminated employees.

26.     Upon information and belief, the Bolter Defendants received and continue to receive income from Defendant OC R&D, and have been enriched by the failure of the Defendants to properly pay their workers.

27.     At all times material herein, the Bolter Defendants have been an "employer" within the meaning of the FLSA, MWHL, and MWPCL.  The Bolter Defendants are jointly and individually liable for damages to the Plaintiffs, under the FLSA, MWHL, and MWPCL.

28.     Plaintiffs may be legally employed in the United States.  As set forth below, Plaintiffs seek unpaid overtime wages in amounts to be determined based on the evidence, as well as liquidated and statutory damages, pursuant to the FLSA, MWHL, and MWPCL, and attorneys' fees and costs as provided under the FLSA, MWHL, and MWCPL.

29.     Additionally, Plaintiffs Stroud and Ramos seek unpaid minimum wages in amounts to be determined based on the evidence, as well as liquidated and statutory damages, pursuant to the FLSA, MWHL, and MWPCL, and attorneys' fees and costs as provided under the FLSA, MWHL, and MWCPL.

30.     Plaintiffs, who received hourly pay, were nonexempt employees of Defendants under the FLSA and MWHL.

31.     By failing to pay the overtime that was due to Plaintiffs (and in the case of Plaintiffs

Stroud and Ramos, failing to pay overtime and minimum wages), Defendants willfully violated very clear and well-established minimum wage and overtime provisions of the FLSA. Plaintiffs further allege that the Defendants violated the overtime provisions of the MWHL (and as to Plaintiffs Stroud and Ramos, Defendants also violated minimum wage provisions of the MWHL). In addition to actual sums owed, Plaintiffs seek liquidated (statutory) damages pursuant to the FLSA and MWHL, prejudgment interest on all amounts owed under the MWHL, three times the amount of unpaid wages pursuant to the statutory damage provisions of the MWPCL, and attorneys' fees and costs as provided under the FLSA, the MWHL, and the MWPCL.

## Factual Allegations

### Jordan Bohall

32.     For all times pertinent to this lawsuit, Plaintiff Bohall worked for the Defendants as a kitchen manager for both Dry 85 OC and Red Red Wine Bar OC

33.     Plaintiff Bohall was employed at Dry 85 OC and Red Red Wine Bar OC from in or about November 2017 until on or about December 1, 2019.

34.     Plaintiff Bohall was promised an hourly rate of $31.25 for all hours worked as a kitchen manager. However, Plaintiff Bohall only received $31.25/hour when clocked in at Dry 85 OC and only received $20.00/hour when clocked in at Red Red Wine Bar OC.

35.     However, Plaintiff Bohall regularly worked at and for both restaurants regardless of which restaurant he was clocked in to at the time.

36.     As kitchen manager, Plaintiff Bohall was responsible for supervising the kitchens for both Dry 85 OC and Red Red Wine Bar OC, which were connected and shared space, resources, and personnel. Plaintiff Bohall regularly moved between the two kitchens and supervised employees on both sides.

37.     Throughout his employment with Defendants, Plaintiff Bohall regularly worked seven days a week and at least 50 hours per week.

38.     Each day, Plaintiff Bohall would normally clock in at Dry 85 OC.  However, once he was near forty hours in a workweek, Defendants would have Plaintiff Bohall clock out from Dry 85 OC and clock in to Red Red Wine Bar OC for his remaining shifts that week.

39.     For example, for the two-week pay period beginning June 17, 2019, Plaintiff Bohall's pay stubs show he worked 79.23 hours while clocked in at Dry 85 OC and 14 hours while clocked in at Red Red Wine OC.  Plaintiff Bohall did not receive the overtime premium for any of these hours.

40.     Whenever Plaintiff Bohall did exceed 40 hours in a workweek at Dry 85 OC, he did receive the overtime premium for the hours worked in excess of 40, but he did not receive the premium for any additional hours clocked in at Red Red Wine Bar OC.

41.     For example, for the workweek beginning July 15, 2019, Plaintiff Bohall's pay stubs show he worked 80 regular hours and 8.94 overtime hours at Dry 85 OC and had 12.95 regular hours at Red Red Wine Bar OC.

42.     On information and belief, Defendants split Plaintiff Bohall's time between the two restaurants in order to avoid paying overtime premium on the hours worked in excess of forty in a workweek.

43.     Regardless of which restaurant he clocked in to, Plaintiff Bohall's job duties did not change and he spent most of his time working in the kitchen for Dry 85 OC.

44.     On many occasions, Plaintiff Bohall would be forced to clock in to one restaurant and then work exclusively in the other.

45.     Additionally, Plaintiff Bohall regularly worked additional hours when he was not clocked

in that he did not receive any compensation for.

46.     As a manager, Plaintiff Bohall was required to come to the restaurant up to an hour early most days to meet with vendors and before other management work.  However, he was not permitted to clock in until the restaurant opened and did not receive any pay for this extra hour of work each day.

47.     On information and belief, on several occasions, Plaintiff Bohall's supervisor, Defendant Lisa Bolter, adjusted his hours on the restaurants' payroll system to reduce his hours.

48.     When Plaintiff Bohall asked Defendant Lisa Bolter about one of these changes, she admitted to changing it, but claimed it was a mistake and reimbursed Plaintiff Bohall for the 20 minutes that had been removed.  However, Plaintiff Bohall repeatedly noticed other times when his time appeared to have been changed.

**Travis Carpenter**

49.     For all times pertinent to this lawsuit, Plaintiff Carpenter worked for the Defendants as a dishwasher for both Dry 85 OC and Red Red Wine Bar OC and line cook for Dry 85 OC.

50.     Plaintiff Carpenter was employed at Dry 85 OC and Red Red Wine Bar OC from in or about November 2018 until on or about December 27, 2019.

51.     Plaintiff Carpenter received an hourly rate of $12.00/hour for his time worked as a dishwasher and $13.00/hour for his time worked as a line cook.

52.     Plaintiff Carpenter regularly worked more hours during the "busy season" starting around April and extending until the beginning of October.

53.     During the off-season, Plaintiff Carpenter regularly worked approximately 50 hours per week, working about 35 hours a week as a dishwasher and about 15 hours a week as a line cook.

54.     During the busy season, Plaintiff Carpenter's hours increased to up to 55 hours a week,

usually working more hours as a line cook.

55.     On information and belief, Defendants split Plaintiff Carpenter's time between the two restaurants in order to avoid paying overtime premium on the hours worked in excess of forty in a workweek.

56.     Regardless of which restaurant he was clocked in to, Plaintiff Carpenter' job duties did not change and he spent most of his time working as the dishwasher for both restaurants.

57.     The connected kitchen for the two restaurants contained just a single dish station, so regardless of where he was clocked in, Plaintiff Carpenter performed work for both restaurants simultaneously.

58.     However, whenever Plaintiff Carpenter was near 40 hours in a workweek at Dry 85 OC, Defendants would force him to clock out of Dry 85 OC and clock in at Red Red Wine Bar OC before continuing his work.

59.     Whenever Plaintiff Carpenter exceeded 40 hours in a workweek at Dry 85 OC, he did receive the overtime premium for the hours worked in excess of 40, but he did not receive the premium for any additional hours clocked in at Red Red Wine Bar OC, nor did he receive any overtime premium when he worked more than 40 hours combined between the two restaurants, but did not exceed 40 hours clocked in at either one individually.

**Frank Cortazzo**

60.     For all times pertinent to this lawsuit, Plaintiff Cortazzo worked for the Defendants as a line cook for both Dry 85 OC and Red Red Wine Bar OC.

61.     Plaintiff Cortazzo has been employed at Dry 85 OC and Red Red Wine Bar OC since in or about late May 2019 and is still employed there as of the filing of this lawsuit.

62.     Plaintiff Cortazzo regularly worked more hours during the "busy season" starting around

April and extending until the beginning of October.

63.     Throughout his time working for Defendants, Plaintiff Cortazzo had a regular hourly rate of $15.00/hour.

64.     During the "off-season," Plaintiff Cortazzo regularly worked a lighter schedule, rarely exceeding 40 hours in a work week.

65.     However, during the "busy season," Plaintiff Cortazzo regularly worked 50 to 70 hours per week.

66.     Plaintiff Cortazzo split his time between Dry 85 OC and Red Red Wine Bar OC and would work shifts at each restaurant as instructed by Defendants.  Whenever Plaintiff Cortazzo neared 40 hours in a workweek at Dry 85 OC, Defendants would only assign Plaintiff Cortazzo to shifts at Red Red Wine Bar OC for the remainder of that work week.

67.     During the "busy season," Plaintiff Cortazzo regularly worked an average of 38 to 50 hours a week at Dry 85 OC and 10 to 20 hours a week at Red Red War Bar OC.

68.     Whenever Plaintiff Cortazzo did exceed 40 hours in a workweek at Dry 85 OC, he did receive the overtime premium for the hours worked in excess of 40, but he did not receive the premium for any additional hours clocked in at Red Red Wine Bar OC.

69.     On information and belief, Defendants split Plaintiff Cortazzo's time between the two restaurants in order to avoid paying overtime premium on the hours worked in excess of forty in a workweek.

70.     Regardless of which restaurant he clocked in to, Plaintiff Cortazzo's job duties did not change.  He worked as a line cook and the only change was which side of the kitchen he primarily worked on.

**Armand Landry-Gass**

71.     For all times pertinent to this lawsuit, Plaintiff Landry-Gass worked for the Defendants as a line cook for both Dry 85 OC and Red Red Wine Bar OC.

72.     Plaintiff Landry-Gass has been employed at Dry 85 OC and Red Red Wine Bar OC since November 2018 and is still employed there as of the filing of this lawsuit.

73.     Plaintiff Landry-Gass originally had an hourly rate of $17.00/hour, which was later raised to $18.00/hour in or around the Summer of 2019.

74.     Plaintiff Landry-Gass regularly worked more hours during the "busy season" starting around April and extending until the beginning of October.

75.     During the "off-season," Plaintiff Landry-Gass regularly worked a lighter schedule, only working an average of 30 hours per week.

76.     However, during the "busy season," Plaintiff Landry-Gass regularly worked 60 to 70 hours per week.

77.     Each day, Plaintiff Landry-Gass would normally clock in at Dry 85 OC. However, once he was near forty hours in a workweek, Defendants would have Plaintiff Landry-Gass clock out from Dry 85 OC and clock in to Red Red Wine Bar OC for his remaining shifts that week.

78.     For example, for the two-week pay period beginning October 22, 2018, Plaintiff Landry-Gass' pay stubs show he worked 70.58 hours while clocked in at Dry 85 OC and 19.89 hours while clocked in at Red Red Wine OC. Plaintiff Landry-Gass did not receive the overtime premium for any of these hours.

79.     Whenever Plaintiff Landry-Gass did exceed 40 hours in a workweek at Dry 85 OC, he did receive the overtime premium for the hours worked in excess of 40, but he did not receive the premium for any additional hours clocked in at Red Red Wine Bar OC.

80.     For example, for the workweek beginning August 26, 2019, Landry-Gass' pay stubs show he worked 80 regular hours and 12.29 overtime hours at Dry 85 OC and had 24.66 regular hours at Red Red Wine Bar OC.

81.     On information and belief, Defendants split Plaintiff Landry-Gass' time between the two restaurants in order to avoid paying overtime premium on the hours worked in excess of forty in a workweek.

82.     Regardless of which restaurant he clocked in to, Plaintiff Landry-Gass' job duties did not change.

83.     On many occasions, Plaintiff Landry-Gass would be forced to clock in to one restaurant and then work exclusively in the other.

84.     On information and belief, on several occasions, Defendant Lisa Bolter adjusted Plaintiff Landry-Gass' hours on the restaurants' payroll system to reduce his hours.

85.     As a manager, Plaintiff Bohall had access to the payroll system and observed several occasions when Plaintiff Landry-Gass' times appeared to have been reduced by Defendant Lisa Bolter.

**Megan Ramos**

86.     For all times pertinent to this lawsuit, Plaintiff Ramos worked for the Defendants in a tipped position as a server for both Dry 85 OC and Red Red Wine Bar OC.

87.     Plaintiff Ramos was employed at Dry 85 OC and Red Red Wine Bar OC from in or about October 2017 until in or about October 2019.  For the entire time that Plaintiff Ramos worked for Defendants, she performed manual work as a server and was non-exempt form the minimum wage and overtime provisions of the FLSA and MWHL.

88.     For the entire time Plaintiff Ramos worked for Defendants, she worked approximately

three days per week, working two shifts each day. Plaintiff Ramos would work a morning shift from 8:00 am until 2:00 pm then work an evening shift from 4:00 pm to 10:00 pm on the same day. For her work, Plaintiff Ramos was told she would receive an hourly rate of $3.63/hour.

89.     On some occasions, when Plaintiff Ramos did not make enough in tips to bring her wage up to the statutory minimum wage, Defendants would pay Plaintiff Ramos the difference. This occurred sometimes in the slower months, but almost never occurred during the Summer.

90.     While Plaintiff Ramos worked for Defendants, Defendants had a practice of requiring servers to compensate Defendants for various business losses. Defendants required servers, including Plaintiff, to pay the cost to the restaurant for any mistakes in ringing up orders and any food or drink that wasn't accounted for. Plaintiff Ramos at all times complied with Defendants' practice described herein.

91.     For example, Plaintiff Ramos recalls at least two occasions in which she was told by a manager that she had drinks that weren't accounted for. On each occasion, Plaintiff Ramos had to pay approximately $60 out of her cash tips to cover the cost.

**William Stroud**

92.     For all times pertinent to this lawsuit, Plaintiff Stroud worked for the Defendants as a kitchen manager for both Dry 85 OC and Red Red Wine Bar OC.

93.     Plaintiff Stroud was employed at Dry 85 OC and Red Red Wine Bar OC from in or about January 2018 until on or about January 25, 2019.

94.     Plaintiff Stroud received an hourly rate of $15.00/hour.

95.     As kitchen manager, Plaintiff Stroud was only responsible for managing the Dry 85 OC kitchen. However, because the Dry 85 OC and Red Red Wine Bar OC kitchens were connected and shared space, resources, and personnel, Plaintiff Stroud regularly moved between the two

sides and supervised employees on both sides as part of his duties.

96.     Throughout his employment with Defendants, Plaintiff Stroud regularly worked seven days a week and at least 60 hours per week.

97.     Each day, Plaintiff Stroud would normally clock in at Dry 85 OC. However, once he was near forty hours in a workweek, Defendants would have Plaintiff Stroud clock out from Dry 85 OC and clock in to Red Red Wine Bar OC for his remaining shifts that week.

98.     On information and belief, Defendants split Plaintiff Stroud's time between the two restaurants in order to avoid paying overtime premium on the hours worked in excess of forty in a workweek.

99.     Regardless of which restaurant he clocked in to, Plaintiff Stroud's job duties did not change, and he was always working as the manager for the Dry 85 OC kitchen, even when he was clocked in at Red Red Wine Bar OC.

100.    Additionally, when Plaintiff Stroud began working for Defendants, he elected to receive his pay by direct deposit. However, when Plaintiff Stroud was required to clock in at Red Red Wine Bar, he received an additional paycheck from Red Red Wine Bar, rather a direct deposit payment which he received for his labor at Dry 85 OC.

101.    Because Plaintiff Stroud believed all of his pay was being directly deposited, he did not realize that the paychecks from Red Red Wine Bar OC were valid and could be deposited/negotiated, and therefore, Plaintiff Stroud did not cash any of them immediately.

102.    After several months, Plaintiff Stroud discovered he was receiving checks from Red Red Wine Bar OC and attempted to cash them but was told by his bank that many of the checks had expired.

103.    Plaintiff Stroud explained what happened to his managers, but Defendants refused to issue

him checks for those pay periods.  As a result of Defendants' efforts to hide their overtime violations from their employees, Plaintiff Stroud was misled into believing he had been paid for his work at Red Red Wine Bar OC in his direct deposit, when he in fact had not been paid for all hours worked.

### General Allegations

104.    As stated above and incorporated herein by reference, Plaintiffs have been employed by the Defendants within the three years preceding the filing of this lawsuit.

105.    Defendants violated the FLSA, the MWHL, and MWPCL insofar as they failed to properly pay Plaintiffs overtime when they worked over forty hours per week, in the amount of 1½ times their respective regular rate of pay (as calculated in accordance with U.S. Department of Labor regulations), for overtime hours worked in excess of forty (40) hours per week.

106.    By failing to pay the overtime wages due to Plaintiffs, Defendants willfully violated very clear and well-established overtime wage provisions of the FLSA and MWHL.  In addition to actual sums owed, Plaintiffs seek liquidated (statutory) damages pursuant to the FLSA, pre-judgment interest on all amounts owed under the MWHL, and three times the overtime wages owed under the MWHL pursuant to the MWPCL, as well as attorneys' fees and costs as provided under the FLSA, the MWHL and MWPCL.

107.    Additionally, Defendants violated the MWPCL, Md. LE Art. § 3-502(a)(ii) and § 3-505(a), insofar that they failed to pay Plaintiffs' earned wages for all hours worked at the Plaintiffs' agreed upon hourly rate.  In addition to the actual sums owed for unpaid wages, Plaintiffs seek three times the amount owed pursuant to the MWPCL, as well as attorneys' fees and costs.

108.    For certain periods of Plaintiff Ramos's employment, Defendants violated the right of

Plaintiff Ramos to be paid the full minimum wage. While the FLSA allows employers to pay less than minimum wage to employees who receive tips, 29 U.S.C. § 203(m), the employer must still pay at least $2.13/hour under the FLSA and $3.63/hour under the MWHL, and must allow the tipped employees to retain all tips (except in a valid tip pooling arrangement, which is not at issue in this case).

109.    Defendants were required by the FLSA and the MWHL (29 U.S.C. § 203(m) and Md. Ann. Code LE art. § 3-419 (respectively)), to inform tipped employees, like Plaintiff, that among other things, the tipped employees were entitled to retain all of their tips except in a valid tip pooling arrangement, before they could *potentially* pay $3.63 an hour to Plaintiff Ramos, an hourly wage which is lower than the minimum wage requirements of 29 U.S.C. § 206 and Md. Ann. Code LE art. § 3-413.

110.    Defendants violated 29 U.S.C. § 203(m) by failing to inform Plaintiff Ramos that Defendants were taking a so-called "tip credit" against Defendants' minimum wage obligations, the amount of the tip credit, or that Plaintiff Ramos had the right to retain all tips except in a valid tip pooling arrangement, or any of the other requirements set out by law. See 29 C.F.R. § 531.59(b). Defendants violated the MWHL and by extension, the MWCPL, by failing to inform Plaintiff Ramos of the provisions of Md. Ann. Code LE art. § 3-419, and its amended provisions, which among other things require that tipped employees must be informed of provisions of Md. Ann. Code LE art. § 3-419 before Defendants could pay a wage of $3.63/hour.

111.    The costs associated with the misrung orders and un-accounted for food and drinks are just like any other business expense of an employer, which cannot be charged to an employee and thereby reduce an employee's wages below the statutory minimum wage.

112.    There is no statutory basis allowing for Defendants to deduct any business expenses from

the wage rate set prescribed in 29 U.S.C. § 203(m) and Md. Ann. Code LE Art. § 3-419.

## Causes of Action

### COUNT I
### (FLSA - Failure to Pay Overtime)
### (All Plaintiffs)

113.   Plaintiffs incorporate paragraphs 1-112 as set forth above, and state that Defendants' actions complained of herein constitute a willful violation of Section 7(a)(1) of the FLSA, because Defendants—at all times during the Plaintiffs' employment—have willfully failed and otherwise refused to compensate the Plaintiffs for hours in excess of forty hours in a work week at a rate of not less than one and one-half times their regular rate of pay.

114.   As a result, Plaintiffs have the legal right to receive the full overtime wage, as required by Federal law and applicable Federal regulations.

### COUNT II
### (MWHL - Failure to Properly Pay Overtime)
### (All Plaintiffs)

115.   Plaintiffs incorporate paragraphs 1-114 as set forth above, and state, in addition, that Defendants' actions complained of herein constitute a violation of Md. Ann. Code LE Art. § 3-420 (overtime) because Defendants have, at all material times, failed and otherwise refused to compensate Plaintiffs for all hours worked in excess of forty hours a work week at a rate of not less than one and one-half times their regular rate of pay, as computed under Md. Ann. Code LE Art. § 3-420.

116.   Defendants' actions complained of herein constitute a violation of Section 3-415 of the MWHL, because Defendants failed to compensate Plaintiffs at a proper overtime rate for hours worked in excess of forty in a work week at a rate not less than one and one-half times the Plaintiffs' regular rate of pay, as required by Maryland law.

117.   As a result, Defendants owe Plaintiffs overtime wages in the amount of one and one-half times the Plaintiff's regular rate of pay, for all work weeks they worked in excess of forty hours per week.

### COUNT III
### (FLSA-Failure to Pay Minimum Wage)
### (Plaintiffs Ramos)

118.   Plaintiffs incorporate paragraphs 1-117 as set forth above, and state that the actions of Defendants complained of herein constitute a willful violation of 29 U.S.C. § 206 (minimum wage) because Defendants failed to pay Plaintiff Ramos the proper minimum wage free and clear of deductions and in a timely manner.

119.   As a result, Plaintiff Ramos has the legal right to receive the full minimum wage, as required by the FLSA.

### COUNT IV
### (MWHL-Failure to Pay Minimum Wage)
### (Plaintiffs Ramos)

120.   Plaintiffs incorporate paragraphs 1-119 as set forth above, and state that the actions of Defendants complained herein constitute a willful violation of Md. Ann. Code LE Art. § 3-413 (minimum wage), because Defendants failed to pay Plaintiff Ramos the proper minimum wage for all hours worked, free and clear and in a timely manner.

121.   As a result, Plaintiff Ramos has the legal right to receive the full minimum wage, as required by Maryland law and applicable Maryland regulations.

### COUNT V
### (MWPCL Act – Unpaid Wages)
### (All Plaintiffs)

122.   Plaintiffs incorporate paragraphs 1-121 as set forth above, and state that the actions of Defendants, in refusing to pay wages free and clear that are due without coercion and

intimidation, is a violation of the MWPCL, Md. LE Art. § 3-502(a)(ii) and § 3-505(a).

123.     That the MWHL further compels each covered employer and non-exempt employee to make, as part of any working agreement, a promise to pay minimum wages and overtime compensation as applicable under the MWHL.

124.     That impliedly, by operation of law, Plaintiffs were entitled to be paid statutory minimum and overtime wages by Defendants under the MWHL, which have not been paid following the cessation of Plaintiffs' term of employment.

125.     That there are no bona fide disputes between the parties as to the right of the Plaintiffs to be paid all lawful wages due arising from their employment.  Defendants know, or should know, that they are covered entities under the MWHL, and that Plaintiffs performed work as employees for which they were not properly compensated.

126.     Plaintiffs are thus entitled under MWPCL, Md. LE Art. § 3-507.2 to an award of treble damages and attorneys' fees with respect to the wages, i.e. the MWHL-mandated wages that have gone unpaid.

## Prayer

Based on the foregoing allegations, Plaintiffs respectfully request that this Court grant money damages in an amount to be determined by the evidence, exclusive of attorneys' fees and costs; and in support thereof, request this Honorable Court to issue the following Orders:

(a) Order Defendants to pay Plaintiffs all unpaid minimum and overtime wage payments determined by the Court to be due and owing, under the FLSA, MWHL, and MWPCL, as well as well as a sum of liquidated damages in an amount equal to the amount of any unpaid overtime wage payments awarded to Plaintiffs pursuant to the FLSA;

(b) Order Defendants to pay the Plaintiffs an amount equal to triple the amount of unpaid

minimum and overtime wages owed to the Plaintiffs, as Plaintiffs are entitled to such

damages under MWPCL;

(c) Award Plaintiffs their attorneys' fees and costs in pursuing this action;

(d) Award Plaintiffs interest on any sums determined due and owing from Defendants,

including pre-judgment interest on attorneys' fees and costs in pursuing this action;

(e) Grant Plaintiffs any additional relief that the Court deems appropriate and just.

Respectfully submitted,


*/s/ Howard B. Hoffman*
Howard B. Hoffman, Esq.
Federal Bar No. 25965

*/s/ (with permission)*
Scott E. Kraff
Federal Bar No. 20899

*/s/ (with permission)*
Jordan S. Liew
Federal Bar No. 20509
HOFFMAN EMPLOYMENT LAW, LLC
600 Jefferson Plaza, Suite 204
Rockville, MD 20852
(301) 251-3752
(301) 251-3753 (fax)

Attorneys for Plaintiffs



**Jury Demand**

The Plaintiffs, by their attorneys, hereby demand a jury trial as to all issues triable by a

jury.

*/s/ Howard B. Hoffman*
Howard B. Hoffman